(Nos. 55060, 55061 cons.—

GLENN MILLIS, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Clifford-Jacobs Forging Company, Appellee).

*Opinion filed March 16, 1982.*

Perz & McGuire, of Chicago (Frank M. Perz and James J. Marszalek, of counsel), for appellant.

Phebus, Tummelson, Bryan & Knox, of Urbana (George G. Bryan, of counsel), for appellee.

JUSTICE MORAN delivered the opinion of the court:

Plaintiff, Glenn Millis, filed a claim under the Workmen's Compensation Act (Ill. Rev. Stat. 1977, ch. 48, par. 138.1 *et seq.*) on September 28, 1976, and a claim under the Worker's Occupational Diseases Act (Occupational Diseases Act) (Ill. Rev. Stat. 1977, ch. 48, par. 172.36 *et seq.*) on February 14, 1978, both claims alleging a hearing loss incurred in his employment with defendant, Clifford-Jacobs Forging Company. With respect to the workmen's compensation claim, the arbitrator found that on September 24, 1976, plaintiff sustained accidental injuries arising out of and in the course of his employment. He held that plaintiff suffered injuries causing "the permanent and complete loss of the hearing of the right ear to the extent of 73.05% thereof *** and *** of the left ear to the extent of 84.3% thereof" and awarded plaintiff $140.16 per week for 79 weeks. With respect to the occupational diseases claim, the arbitrator determined that plaintiff failed to prove his exposure to the hazards of an occupational disease as defined by the Occupational Diseases Act.

On review, the Industrial Commission concluded, with respect to the workmen's compensation claim, that plaintiff did not sustain any accidental injuries at work on September 24, 1976, and set aside the arbitrator's decision. With respect to the occupational diseases claim, the Commission found that plaintiff had been exposed to the hazards of an occupational disease but that he had failed to prove that he sustained any permanent disability as a result of that exposure after July 1, 1975, and denied relief. The claims were consolidated, and both decisions of the Industrial Commission were confirmed by the circuit court of Champaign County.

We note parenthetically that the original application

under the Workmen's Compensation Act alleged an accident date of September 24, 1976, although at the time of arbitration the application was amended to show an accident date of September 30, 1976. As indicated above, the decisions of the arbitrator and Industrial Commission refer to an accident date of September 24, 1976. In accordance with plaintiff's request, with which defendant is in agreement, this court's decision will refer to an alleged accident date of September 30, 1976.

This case presents two issues: (1) Was the Commission's decision on the workmen's compensation claim contrary to the manifest weight of the evidence? (2) On the occupational diseases claim, did the Commission err in its application of the law under the facts contained herein?

On September 30, 1976, at age 65, plaintiff retired from his employment with defendant, where he had worked for approximately 39 years. Most of that time was spent in the forge shop, which contained as many as 14 steam-drop forging hammers ranging in size from 1,500 to 25,000 pounds. A noise-and-exposure profile report disclosed that, in operation, the hammers emitted noise between approximately 94 and 115 decibels. Plaintiff testified that sometime during the early 1960's he noticed he was having hearing difficulties and that by 1965 he began experiencing "head noises" which were described as, among other things, a humming in his head. Plaintiff stated that in 1969 and in the early 1970's his hearing declined and his head noises increased, and that in 1975 his hearing deteriorated still further. He also testified that he occasionally wore a hearing aid in 1964 and 1965, that he had worn a hearing aid in one ear since 1969 and hearing aids in both ears since 1974. Plaintiff also testified that on September 30, 1976, nothing out of the ordinary happened to him at work, and that he did not sustain an accident on that date.

Plaintiff's expert, Dr. Elmer Friedman, conducted a hearing examination on December 30, 1976. He testified that plaintiff suffered a severe to profound sensorineural hearing loss in both ears, probably caused by acoustic trauma. In response to a hypothetical question, Dr. Friedman opined that a causal connection existed between plaintiff's employment and his hearing loss. The medical reports of defendant's expert, Dr. William Youngerman, who examined plaintiff on January 3 and January 17, 1977, stated that plaintiff suffered a moderate, bilateral, neurosensory hearing loss apparently resulting principally from acoustic trauma.

Defendant's expert, Dr. G. D. Castillo, conducted hearing examinations of plaintiff on June 6, 1974, and October 13, 1978. Dr. Castillo testified that audiometric testing revealed a sensorineural hearing loss of approximately 55 decibels at a 250-cycle frequency and a descending pattern of hearing loss with no response at the 8000-cycle frequency. He stated that the audiogram he performed in 1978 was identical to, within five decibels (which could be attributable to testing variables), and revealed "essentially unchanged hearing" from, the audiogram he performed in 1974, and that both audiograms were nearly identical to another audiogram purportedly administered to plaintiff on March 31, 1972. Dr. Castillo also stated that, except for the recovery shown in the 8000-cycle range, the December 30, 1976, test by Dr. Friedman and the January 3, 1977, test by Dr. Youngerman demonstrated the same hearing loss as the 1972, 1974 and 1978 tests.

Plaintiff's expert, Dr. Irwin Horwitz, administered an audiogram to plaintiff on November 19, 1979, which, he stated, revealed permanent, sensorineural noise-induced hearing loss. Dr. Horwitz testified that the hearing loss shown on the March 31, 1972, and June 6, 1974, audiograms was basically the same as the hearing loss shown on

the audiogram he administered on November 19, 1979, except that this latter audiogram demonstrated some hearing recovery at the 6000- and 8000-cycle levels. He also indicated that the tests showing a failure to respond at high frequencies could be a function of ineffective masking at high decibel levels. Finally, in response to a hypothetical question, Dr. Horwitz testified that he would have expected no fluctuations in plaintiff's hearing from June 6, 1974, up to the time of his examination on November 19, 1979.

We turn first to the workmen's compensation claim. Plaintiff concedes in his brief that he experienced no sudden loss of hearing due to trauma, but a gradual deterioration of hearing. He also states that the arbitrator made the correct finding as to disability but concedes that the arbitrator applied the wrong remedy by allowing an award under the Workmen's Compensation Act rather than the Occupational Diseases Act. This court has repeatedly held that a recovery under the Workmen's Compensation Act must be based upon an accident that is traceable to a definite time, place and cause. (*E.g.*, *Bunney v. Industrial Com.* (1979), 75 Ill. 2d 413, 422; *International Harvester Co. v. Industrial Com.* (1973), 56 Ill. 2d 84, 89.) This court has also repeatedly held that it will not reverse a decision of the Industrial Commission unless the decision is contrary to the manifest weight of the evidence. *E.g.*, *Keystone Steel & Wire Co. v. Industrial Com.* (1981), 85 Ill. 2d 178, 185; *Seiber v. Industrial Com.* (1980), 82 Ill. 2d 87, 97; *Caterpillar Tractor Co. v. Industrial Com.* (1980), 82 Ill. 2d 1, 6.

Plaintiff testified that he sustained no accident on September 30, 1976. Further, the record discloses no indication of any specific accident, occurring on any date, to which plaintiff's hearing loss can be attributed. Accordingly, the Commission's decision denying relief under the workmen's compensation claim is not contrary to the

manifest weight of the evidence and will not be disturbed.

With respect to the Occupational Diseases Act claim, plaintiff argues that the Commission erred by denying him compensation because he was exposed to the hazards of an occupational disease on September 30, 1976, a date on which a statutory remedy was provided for permanent partial loss of hearing. He asserts that the Commission improperly applied section 7(d) of the Occupational Diseases Act, enacted September 15, 1980, retroactively to bar his recovery. Defendant asserts that plaintiff's hearing loss was suffered prior to July 1, 1975, when neither the Workmen's Compensation Act nor the Occupational Diseases Act allowed compensation for partial hearing loss, and that no change occurred in plaintiff's hearing after July 1, 1975. Defendant further maintains that in reaching its decision, the Commission did not apply the 1980 amendments to section 7 of the Occupational Diseases Act.

Prior to July 1, 1975, the Occupational Diseases Act provided recovery for total and permanent loss of hearing but excluded recovery for permanent partial loss of hearing. (Sections 8(e)(14) and (e)(16) of the Occupational Diseases Act (Ill. Rev. Stat. 1973, ch. 48, pars. 172.43(e)(14), (e)(16)).) As of July 1, 1975, the Occupational Diseases Act was amended and, by incorporation of the Workmen's Compensation Act, provided compensation for permanent partial loss of hearing. (Section 7 of the Occupational Diseases Act (Ill. Rev. Stat. 1975, ch. 48, par. 172.42); section 8(e)(14) and (e)(16) of the Workmen's Compensation Act (Ill. Rev. Stat. 1975, ch. 48, pars. 138.8(e)(14), (e)(16)). See also Ill. Rev. Stat., 1976 Supp., ch. 48, par. 172.42.) Effective September 15, 1980, section 7 of the Occupational Diseases Act was amended by paragraphs (a) through (f). Paragraphs (a), (b) and (c) establish guidelines for determining compen-

sation for hearing losses, including partial hearing loss. Paragraph (d) provides:

"If a hearing loss is established to have existed on July 1, 1975, by audiometric testing the employer shall not be liable for the previous loss so established nor shall he be liable for any loss for which compensation has been paid or awarded." Ill. Rev. Stat., 1980 Supp., ch. 48, par. 172.42(d).

Since July 1, 1975, where it provided (by reference to the Workmen's Compensation Act) compensation for hearing loss resulting from an occupational disease, section 7 of the Occupational Diseases Act stated:

"[F] or this purpose [compensation] the disablement[,] disfigurement or death of an employee by reason of an occupational disease, arising out of and in the course of his employment, shall be treated as the happening of an accidental injury." (Ill. Rev. Stat. 1975, ch. 48, par. 172.42.)

Hence, just as the law in effect at the time of the injury governs a workmen's compensation proceeding (*Wilson-Raymond Constructors Co. v. Industrial Com.* (1980), 79 Ill. 2d 45, 51; *Health & Hospitals Governing Com. v. Industrial Com.* (1978), 72 Ill. 2d 263, 271; *Stanswsky v. Industrial Com.* (1931), 344 Ill. 436, 438-40), the law in effect at the time of the disablement governs an occupational diseases proceeding.

Plaintiff, as he points out, was exposed to the hazards of an occupational disease on September 30, 1976. However, the record discloses that the disablement or impairment suffered occurred prior to July 1, 1975. Both Dr. Castillo and Dr. Horwitz testified that audiograms administered to plaintiff in 1972 and 1974 were generally comparable to audiograms given in 1978 and 1979. In addition, Dr. Horwitz, testifying for plaintiff, stated that he would have expected no fluctuation in plaintiff's hearing from June 6, 1974 (the date of the last audiogram taken prior to July 1, 1975), to the date of the examina-

tion he performed on November 19, 1979.

This court has held that it is for the Commission to evaluate all the evidence, including the testimony and medical records produced, to judge the credibility of witnesses, to resolve conflicts in medical evidence and draw reasonable inferences and conclusions from the facts. The Commission's findings will not be disturbed on review unless they are contrary to the manifest weight of the evidence. (*E.g., Flores v. Industrial Com.* (1981), 87 Ill. 2d 48, 54-55; *Vestal v. Industrial Com.* (1981), 84 Ill. 2d 469, 473. See *Parris v. Industrial Com.* (1977), 69 Ill. 2d 31, 37.) In light of the medical testimony presented regarding the hearing loss displayed on audiometric tests administered to plaintiff, the Commission's finding that plaintiff did not sustain a permanent disability as a result of exposure after July 1, 1975, was clearly not contrary to the manifest weight of the evidence.

We find no merit in plaintiff's argument that the Commission retroactively applied the September 15, 1980, amendment, paragraph 7(d), which excluded an employer's liability for a hearing loss suffered prior to July 1, 1975. The Commission's findings contain no indication that the decision was reached based upon that provision. Irrespective of any subsequent amendment, the law in effect at the time plaintiff suffered his disablement, which the evidence revealed to be prior to July 1, 1975, excluded compensation for permanent partial loss of hearing. Accordingly, the Commission properly denied recovery under the Occupational Diseases Act.

For the reasons stated, the judgment of the circuit court of Champaign County is affirmed.

*Judgment affirmed.*